Opinion Issued February 19, 2008









Opinion Issued February 19,
2008

 

 

 

 

 

 

 

 

 

 

 

 

 










 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00144-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



WILLIAM HARRIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 232nd District Court

Harris County, Texas

Trial Court Cause No. 876384








 



MEMORANDUM OPINION

           William Harris filed a
motion for rehearing.  We grant rehearing and withdraw our opinion and judgment
of December 18, 2008, and issue the following in their stead.  Our disposition
of the case remains unchanged.  Harris appeals from the trial court’s denial of
his motion for post-conviction forensic DNA testing under Chapter 64 of the
Code of Criminal Procedure.  See Tex.
Code. Crim. Proc. Ann. art.
64.01–.05 (Vernon 2006 & Supp. 2008).  We affirm the trial court’s order.

Background

In September 2002, a jury
found Harris guilty of murdering his wife by strangulation and sentenced him to
sixty-five years’ confinement and a $10,000.00 fine.  The Sixth Court of
Appeals of Texas affirmed Harris’s conviction in 2004.  After his conviction,
Harris twice moved for post-conviction DNA testing in the trial court, which
denied the motions.  It is from the second denial that Harris appeals.  

We summarize the facts of
the underlying case from the Sixth Court of Appeals opinion in Harris’s appeal
of his conviction.  See Harris v. State, 133 S.W.3d 760 (Tex. App.—Texarkana 2004, pet. ref’d).  

In March 2001, Wenona
Harris lived in an apartment complex in Texas City with her young son Jyron. 
Wenona was married to Harris, but had filed for a divorce, due to be final a
week after her death.  On March 4, police discovered a body, later identified
as Wenona Harris, behind a dumpster in north Houston.  Police later arrested
William Harris for Wenona’s murder, caused by strangulation.

Three witnesses testified
that they had seen William Harris at Wenona’s apartment complex on March 3. 
The first, a neighbor, saw Harris leaving Wenona’s apartment and moments later
saw him being shown around the complex by a leasing agent.  Between 2:30 and
3:00 p.m., two women waiting to pick up a friend at the complex observed an
African-American male carrying what appeared to be a large bundle of laundry
wrapped inside either sheets or a large comforter.  One of the witnesses later
identified Harris in a police lineup.  As the witnesses watched the man, they
observed a human arm fall out of the bundle and saw a body inside the bundle. 
The witnesses saw the man put the body, which they believed was that of a small
African-American or Hispanic woman or child, into a black sport-utility vehicle
and push it down so that it could not be seen.  While the witnesses watched the
vehicle drive away from the complex, they wrote down the vehicle’s license
plate number.  Later, they gave this information to the police, who determined
that the sport-utility vehicle was a black Lincoln Navigator registered to
William Harris.  

 Additionally, witnesses
testified that just weeks before Wenona’s murder, Harris had checked himself
into the hospital because he said that he had been having homicidal thoughts of
killing his wife by strangling her or shooting her with a gun.  Wenona’s sister
testified that Harris had a history of family violence and injuring Wenona,
including an incident where Harris choked Wenona until she lost consciousness.

Discussion

           Harris contends that the
trial court erred in denying his motion for post-conviction DNA testing because
DNA obtained from the scene belonging to a third party would exculpate Harris. 
          We apply a bifurcated standard of review to a trial court’s decision
to deny post-conviction DNA testing.  Bates v. State, 177 S.W.3d 451,
453 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (citing Rivera v. State,
89 S.W.3d 55, 59 (Tex. Crim. App. 2002)).  Accordingly, we afford almost total
deference to the trial court’s determination of issues of historical fact and
its application of the law to fact issues that turn on an evaluation of
credibility and demeanor.  Id.  We review de novo the
application-of-law-to-fact issues, including the ultimate question of whether
the trial court was required to grant a motion for DNA testing under Chapter 64
of the Code of Criminal Procedure.  Id.

          A convicted person may move
in the trial court for a DNA analysis of evidence containing biological
material.  Tex. Code Crim. Proc. Ann. art.
64.01(a).  The motion may request DNA testing only if the evidence was in the
possession of the State during the trial of the offense, but 

(1) was not previously subject to DNA
testing

(A) because DNA testing was

(i)    not available, or 

(ii) available but not technologically
capable of providing probative results, or

. . . .

 

(B)(2)  although previously subject to
DNA testing, can be tested again with newer testing techniques that provide a
reasonable likelihood of results that are more accurate and probative than the
results of the previous test. 

 

Tex. Code.
Crim. Proc. Ann. art.
64.01.  Further, article 64.03 of the Code of Criminal Procedure provides, in
pertinent part,

(a) A convicting court may order forensic
DNA testing under this chapter only if:

(1) the court finds that:

(A) the evidence:

(i) still exists and is in a condition
making DNA testing possible; and

(ii) has been subjected to a chain of
custody sufficient to establish that it has not been substituted, tampered
with, replaced, or altered in any material respect; and

(B) identity was or is an issue in the
case; and

(2) the convicted person establishes by
a preponderance of the evidence that:

(A) the person would not have been
convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA
testing is not made to unreasonably delay the execution of sentence or
administration of justice.

 

Tex. Code.
Crim. Proc. Ann. art.
64.03(a).  If the trial court concludes that the defendant has met the
requirements of Article 64, then the trial court shall order DNA testing.  Id. at (c). 

A convicted person must
do more than merely allege that these requirements have been met.  Dinkins
v. State, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002).  Rather, a motion for
DNA testing must be accompanied by an affidavit, sworn to by the convicted
person, containing statements of fact that support the motion.  Id.; Tex. Code Crim. Proc. Ann. art
64.01(a).  Texas Civil Practice and Remedies Code Section 132.001 allows an
inmate in the Texas Department of Criminal Justice or in a county jail to make
an unsworn declaration in lieu of a written, sworn declaration, as long as it
meets the requirements in Section 132.002, which requires that it be in writing
and subscribed by the person making the declaration as true under the penalty
of perjury, and it be substantially in the form as set out by Section 132.003. 
Tex. Civ. Prac. & Rem. Code Ann.
§§ 132.001–.003 (Vernon 2005); see Owens v. State, 763 S.W.2d 489, 490
(Tex. App.—Dallas 1988, pet. ref’d); Green v. State, 264 S.W.3d 63, 67
(Tex. App.—Houston [1st Dist.] 2007, pet. ref’d).  Harris verified the facts
set forth in his pro se second motion for DNA testing in an unsworn declaration.

However, Harris failed to
meet his burden of establishing by a preponderance of the evidence that he
would not have been convicted had exculpatory results been obtained in DNA
testing.  See Dinkins, 84 S.W.3d at 643.   As in Dinkins,
here the trial court denied Harris’s motion based on the fact that Harris
failed to meet his burden to show by a preponderance of the evidence that he
would not have been convicted if exculpatory DNA results had been obtained.  A
convicted person must show that a reasonable probability exists that the DNA
tests would prove his innocence.  Rivera v. State, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002); Bates v. State, 177 S.W.3d 451, 453 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).  Harris’s affidavit offers the conclusory statement
that “the States’ Prosecuting Attorney utilized/or gave reference to over 24
exhibits” and that he would not have been convicted if DNA testing had been
done on a number of these items of evidence, namely (1) car floor mats, (2)
blood from the complainant’s carpet, linens and a pillow case, and (3) hair
fibers, fingernail scrapings, and vaginal and anal swabs retrieved from the
complainant during the investigation. The existence of another person’s DNA
found in any of these samples would not prove, however, by a preponderance of
the evidence, that Harris was wrongly convicted, because it would not exclude
Harris as the person who strangled Wenona.   The bare assertion that another
person’s DNA might be found at the crime scene, without more, is not exculpatory
evidence sufficient to find that a trial court abused its discretion in
ordering DNA testing.  See Prible v. State, 245 S.W.3d 466, 470 (Tex.
(Tex. Crim. App. 2008) (“without more, the presence of another person’s DNA at
the crime scene would not constitute affirmative evidence of the appellant’s
innocence” requiring relief under Chapter 64); Bell v. State, 90 S.W.3d
301, 306 (Tex. Crim. App. 2002) (holding that evidence of another person’s DNA,
if found on a hair, a cigarette butt and a bath mat with blood stains from the
crime scene does not constitute affirmative exculpatory evidence).  As
in Bell, here Harris “set forth only a bare assertion that the
biological samples in question might belong to someone else.  This is not
enough.”  Id.

Conclusion

We hold that the trial
court did not err in finding that Harris failed to meet his burden under
Article 64.03 of the Texas Code of Criminal Procedure to obtain DNA testing. 
We therefore affirm the order of the trial court.  

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Judges Jennings,
Hanks, and Bland.

Do not publish.  Tex. R. App. P. 47.4